IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Scotty G. Terry, ) | |
| ) | |
| Plaintiff, ) | Case No. 6:13-cv-02824-BHH-JDA |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Drive Automotive Industries of America, ) | |
| Inc., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 28.] Plaintiff filed this action alleging a retaliation claim pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

Plaintiff, a former employee of Drive Automotive Industries of America, Inc. ("Defendant"), filed his Complaint on October 16, 2013 [Doc. 1] and his Amended Complaint on November 12, 2013 [Doc. 6],[1] alleging Defendant unlawfully retaliated against Plaintiff by terminating his employment. The following facts are undisputed:

- Plaintiff was employed by Defendant on or about October 23, 2006, as a tool and die maker. [Docs. 6 ¶ 6; 28-1 at 2–3.]

---

[1] Plaintiff's Amended Complaint appears to correct errors in his original Complaint and does not provide additional facts or arguments. [See Docs. 1, 6.] Accordingly, the Court will reference the Amended Complaint throughout this Report and Recommendation.

- In January 2012, Defendant posted a new position for a "Tooling Coordinator/Supervisor."  [Docs. 6 ¶ 8; 28-1 at 3.]

- Plaintiff, an American; Greg Cole, an American; and Gervaise Minne ("Minne"), a South African, applied for the position.  [Docs. 6 ¶ 8; 28-1 at 3.]

- The three candidates were interviewed by Dean Anderson ("Anderson"), Assistant Manager Assembly Tooling, and Tommy Cox ("Cox"), Production Manager, both South African.[2] [Docs. 6 ¶ 9; 28-1 at 3.]  Minne was selected for the position. [Docs. 6 ¶ 10; 28-1 at 3.]

- On February 21, 2012, Plaintiff called the employee hotline[3] ("the hotline") to complain that Minne had been selected on the basis of his national origin.[4]  [Docs. 6 ¶ 13; 28-1 at 3.]

- Plaintiff's allegation was investigated by Rob Eastwood ("Eastwood"). [Docs. 6 ¶¶ 14–15; 28-1 at 3.]

- On July 19, 2012, Plaintiff was called in for a meeting with Minne, Cox, and Emily Kingsbury ("Kingsbury").  [Docs. 6 ¶ 17;  28-1 at 4; 28-3 at 15.]  Plaintiff was told

---

[2]Defendant's motion for summary judgment indicates that Emily Kingsbury, the Human Resources Generalist and an American, was also present for interviews of the candidates [Doc. 28-1 at 3]; however, the motion does not indicate who was responsible for choosing the candidate who was hired.  Plaintiff contends that Cox and Anderson made the ultimate hiring decision.  [Doc. 6 ¶ 10.]

[3]Magna International, Inc., Defendant's parent company, maintains a hotline for employee complaints. [Docs. 6 ¶ 13; 28-1 at 3.]

[4]Plaintiff contends that Scott Claus also called the hotline to complain that Minne was selected based on his national origin and not his qualifications.  [Doc. 6 ¶ 13.]

that Minne had seen Plaintiff sleeping at work on Monday, July 16, 2012, and, as a result, Plaintiff was terminated. [Docs.6 ¶ 17; 28-1 at 4; 28-3 at 15.]

Plaintiff alleges that his termination was retaliation for his calling the hotline. [Doc. 6 ¶ 20.] Further, according to Plaintiff, other employees of Defendant have been caught sleeping and have not been terminated. [Doc. 6 ¶ 18.]

Defendant filed a motion for summary judgment on August 15, 2014. [Doc. 28.] On September 2, 2014, Plaintiff filed a response in opposition to the motion. [Doc. 29.] Defendant filed a reply on September 12, 2014. [Doc. 31.] Accordingly, the motion is now ripe for review.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

4

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Prima Facie Case**

Defendant argues Plaintiff's retaliation claim must fail because he cannot establish a prima facie case of retaliation or that Defendant's decision to terminate Plaintiff for sleeping at work was a pretext for retaliation. [Doc. 28-1.] The Court agrees Defendant is entitled to summary judgment.

Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter"[5] or has "made a charge, testified, assisted, or participated in a Title VII investigation proceeding, or hearing under this subchapter." 42 U.S.C. § 2000d-3(a). The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). Thus, through the two clauses of the anti-retaliation provision, Title VII protects activities that can be characterized as opposing a practice that is unlawful under Title VII or as participating in a Title VII investigation, proceeding, or hearing. *Id.* at 59 (quoting 42 U.S.C. § 2000e-3(a)); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (stating "[p]rotected activities fall

---

[5]Here, Plaintiff contends a hiring decision was made on the basis of national origin which is an unlawful employment practice under 42 U.S.C. § 2000e-2(a)(1).

5

into two distinct categories: participation or opposition"); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009) (stating the first clause of the anti-retaliation provision is known as the "opposition clause," and the second clause is known as the "participation clause"). Activities protected under the participation clause—(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII—are those "essential to the machinery set up by Title VII," and therefore, Title VII prohibits employers from retaliating against employees who undertake these actions. *Laughlin*, 149 F.3d at 259, 259 n.4 (internal quotation marks omitted) (quoting *Hasimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)).

A plaintiff may prove a retaliation claim through direct evidence or by using the *McDonnell Douglas* burden-shifting framework.[6] *Smith v. First Union Nat'l Bank*, 202 F.3d

---

[6]Plaintiff relies exclusively on the *McDonnell Douglas* burden-shifting scheme in this case. As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas*] 'pretext' framework. Under this framework, an employee must first prove a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the Plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (*citing Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation. *McDonnell Douglas*, 411 U.S. at 804. Here, Plaintiff does not attempt to survive summary

234, 248 (4th Cir. 2000); *Cooper v. City of N. Myrtle Beach*, No. 4:10-cv-1676, 2012 WL 1283498, at *6 (D.S.C. Jan. 25, 2012). "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011); *Holland*, 487 F.3d at 218. Defendant does not contest that Plaintiff has satisfied the first two elements of his prima facie case—(1) Plaintiff engaged in protected activity by calling the hotline to complain that Minne had been selected on the basis of his national origin,[7] and (2) Plaintiff was terminated. [Doc. 28-1.] Instead, Defendant contends Plaintiff cannot establish the third element of his prima facie case—that a causal connection existed between the protected activity and the asserted adverse action. [*Id.*] The Court agrees.

---

judgment using direct or circumstantial evidence of retaliation. Instead, he relies exclusively on the *McDonnell Douglas* burden-shifting scheme to argue he can establish a prima facie case of retaliation and that Defendant's articulated legitimate, non-discriminatory reason for suspending and terminating Plaintiff is a pretext for retaliation. [Docs. 6, 29.]

[7]Defendant refers to Plaintiff's "alleged protected activity" [Doc. 28-1 at 9] but does not attempt to argue that the phone call to the hotline was not protected activity. Accordingly, the Court declines to address the first two prongs under *Hoyle*.

To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that his employer took the adverse action "'because the plaintiff engaged in a protected activity.'" *Holland*, 487 F.3d at 218 (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoake Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). Thus, to demonstrate causation, a plaintiff must first show that the employer was aware of the protected activity. *See Shield v. Fed. Express Corp.*, 120 F. App'x 956, 962 (4th Cir. 2005) (*citing Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)). In certain circumstances, temporal proximity between the protected activity and the adverse action can be probative of a causal connection. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001).

Here, Plaintiff has failed to put forth evidence of a causal connection; therefore, Plaintiff must rely on temporal proximity alone.[8] No genuine issue of material fact remains as to Plaintiff's retaliation claim, and the Court concludes Defendant is entitled to summary judgment because Plaintiff has failed to demonstrate retaliation was a but-for factor in his

---

[8]In cases where temporal proximity between the protected activity and an alleged adverse employment action is missing, a plaintiff may provide evidence of retaliatory animus during the intervening period to establish a causal connection. *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal quotations and citation omitted). However, Plaintiff has produced no evidence of retaliatory animus between his complaint and his termination. Plaintiff asserts that Minne was acting as if "he was attempting to get something on Plaintiff" by sneaking up behind him to take his picture. [Doc. 29 at 4.] However, Plaintiff has provided no evidence to support such a claim beyond his own conclusory statements. *See Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (holding that plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact"). Therefore, the Court finds Plaintiff has failed to establish a causal connection between his protected activity and the adverse employment action and, thus, cannot establish a retaliation claim. Accordingly, the Court recommends Defendant's motion for summary judgment be granted as to Plaintiff's retaliation claim.

termination—specifically, Plaintiff has failed to show evidence of any causal connection between Plaintiff's complaint and the subsequent investigation and his termination.

First, with respect to the time between Plaintiff's phone call and his termination, too much time elapsed to establish a temporal proximity sufficient to prove a causal connection. Where courts have accepted mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality, they have held that temporal proximity must be very close. *Clark Cnty. Sch. Dist.*, 532 U.S. at 273. While the Fourth Circuit has not determined the exact degree of temporal proximity that must exist to show a causal nexus between the protected activity and the adverse action, it has indicated a three or four month time lapse is too long to establish a causal connection if the plaintiff is relying solely on temporal proximity. *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) ("In this case, at least three to four months separated the termination of [the plaintiff's] employment and the claimed protected activities. We find that this time period is too long to establish a causal connection by temporal proximity alone."). Here, almost five months elapsed between Plaintiff's phone call to the hotline and his termination.[9] Accordingly, the events did not occur "very close" together in time, and therefore, the nearly five-month gap is not sufficient to establish temporal proximity and a causal connection between the two events.

---

[9] Defendant's memorandum in support of its motion for summary judgment states that Plaintiff called the hotline on February 21, 2012. [Doc. 28-1 at 3.] Plaintiff's pleadings do not include the date that Plaintiff called the hotline; however, Plaintiff agrees that nearly five months passed between the date he called the hotline and his termination. [Doc. 29 at 3.]

Second, with respect to the time between the decision makers' knowledge of the protected activity and Plaintiff's termination, Plaintiff has failed to establish when the decision makers knew about the protected activity.[10] Plaintiff contends Eastwood and Scott Claus ("Claus") told Plaintiff that Cox knew about Plaintiff's complaint; however, Plaintiff has failed to establish *when* Cox learned of this protected activity.[11]  Plaintiff testified Eastwood told Plaintiff that Eastwood had informed Cox that Plaintiff had complained. [Doc. 29-1 at 5.] However, by Plaintiff's own admission, the conversation between Plaintiff and Eastwood did not take place until after Plaintiff had been terminated and Plaintiff did not know when Eastwood had told Cox about his complaint.  [Doc. 29-1 at 5–8.] Additionally, Plaintiff testified that Claus told Plaintiff a few days after he was terminated that Cox knew Plaintiff had complained.[12]  [Doc. 29-1 at 4–5.] Plaintiff further testified that

---

[10]Cox and Anderson averred in their declarations that at the time of Plaintiff's termination, they did not know that Plaintiff had called the hotline to complain about the selection of Minne for the job. [Docs. 28-9 ¶ 4; 28-10 ¶ 4.] Minne testified in his deposition that he was not consulted on the decision to terminate Plaintiff. [Doc. 28-4 at 9–10.]

[11]Defendant argues there is no evidence the decision makers knew about Plaintiff's complaint; however, the Court may assume without deciding that the decision makers had knowledge of Plaintiff's complaint because Defendant is still entitled to summary judgment.

[12]In Plaintiff's declaration dated September 2, 2014, Plaintiff avers that in "May or June 2013 Scott Clans [sic] . . . told [Plaintiff] that 'they' who I understood to be [Cox, Anderson, and Minne], knew exactly who had made the hotline complaint." [Doc. 29-2 ¶ 4.] As an initial matter, May or June 2013 is almost one year after Plaintiff was terminated. Accordingly, Plaintiff's statement does not establish when or even that Cox, Anderson, or Minne was aware Plaintiff had phoned the hotline before he was terminated. Moreover, even if the Court assumes 2013 was a scrivener's error and Plaintiff meant 2012, the declaration would conflict with Plaintiff's deposition taken June 5, 2014. [Doc. 29-1 at 3–5 (stating that "one or two days after" Plaintiff was terminated, Scott Claus told him that Cox knew who had called the hotline).]; *see Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990) (holding that if an affidavit conflicts with earlier sworn testimony, it must "be disregarded as a sham issue of fact"); *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ( "A genuine issue of material fact is not created where the only issue of fact is

10

Claus did not tell Plaintiff when Cox became aware of Plaintiff's complaint. [*Id.* at 5.] Because Plaintiff cannot establish when the decision makers knew that he had called the hotline, Plaintiff has not met his burden of proving temporal proximity sufficient to establish a causal connection.

**Legitimate Nonretaliatory Explanation and Mere Pretext**

Moreover, even if Plaintiff had presented sufficient evidence to establish a prima facie case of retaliation, he has failed to present any evidence of pretext following Defendant's articulated legitimate, nonretaliatory explanation for terminating Plaintiff's employment—because Plaintiff was sleeping while at work. In her affidavit, Debbie Sovine ("Sovine"), Defendant's Human Resources Manager, avers that since August 20, 2010, the date Sovine was hired, every employee Human Resources has determined was asleep at work has been terminated. [Doc. 28–7 at 2.] She states that eleven people have been terminated for sleeping, including six that were terminated after Plaintiff. [*Id.*] Further, Kingsbury averred that she investigated the report that Plaintiff was sleeping at work and determined that he had been asleep. [Doc. 28-2 at 2.] She also maintains that Plaintiff's termination is consistent with her approach to other employees found sleeping, and Plaintiff's complaint was not a factor in his termination. [*Id.* ¶ 6–7.] Accordingly, Defendant has fulfilled its burden to articulate a legitimate, nonretaliatory explanation for Plaintiff's suspension and termination.

---

to determine which of the two conflicting versions of the plaintiff's testimony is correct."). Accordingly, Plaintiff cannot establish a temporal proximity between Defendant's knowledge of the protected activity and Plaintiff's termination based on his declaration alone.

11

However, Plaintiff has failed to demonstrate that Defendant's articulated reason was mere pretext. To prove an employer's articulated reason is a pretext for retaliation, a plaintiff "must prove '*both* that the reason was false, *and* that [retaliation] was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). Here, Plaintiff fails to direct the Court to any evidence to establish Defendant's articulated reason for terminating Plaintiff was false or that retaliation was the real motivation in these disciplinary decisions. Aside from Plaintiff's statements that he was not asleep on Monday, July 16, 2012 [*e.g.* Doc. 29-1 at 28–29] and his contention that the rule against sleeping was not generally enforced [*id.* at 5], nothing in the record supports an inference that Defendant's explanation was pretextual or that Defendant's employees did not believe Plaintiff had fallen asleep at work.[13] Plaintiff also testified in his deposition that he did not have any evidence that supported his assertion that Minne did not believe Plaintiff was asleep on July 16, 2012. [Doc. 28-3 at 27.] That Defendant consistently disciplined other employees for sleeping at work around the same time supports a finding that Defendant's articulated reason is not false. Additionally, Plaintiff admits that he was given an employee handbook that explained Defendant's rule against sleeping at work and included a range

---

[13]Plaintiff provides a copy of an email from Jeff Capps, the only employee present during the time he was allegedly asleep, informing Harold Lewis, Assembly Maintenance Supervisor, that he had not seen anyone sleeping on Monday, July 16, 2012. [Doc. 29-4 at 6.] Plaintiff further proffers the testimony of David Haase, a former employee of Defendant, who averred that he had seen Minne behave threateningly towards Capps and that Capps had told him that Minne was looking for back-up that Plaintiff had been sleeping. [Doc. 29-5 at 22–23, 27.] However, with respect to the email from Capps, the email was not in the form of an affidavit or other sworn testimony. Additionally, Haase was not able to provide evidence that Plaintiff was not sleeping or that Minne believed he was not sleeping in his testimony. [*See* Doc. 29-5.]

of disciplinary actions, including termination. [Docs. 28-3 at 7–11; 28-5.] Rather than direct the Court to evidentiary support to demonstrate Defendant's articulated reason is false and that retaliation was the real reason, Plaintiff attempts to rely on conclusory statements alone[14] [*see e.g.* Doc. 28-3 at 25 (when asked what evidence Plaintiff had to support his belief that Defendant terminated his employment as a result of his protected activity, Plaintiff stated, "Because the sleeping accusation has to be fabricated.")], which are insufficient to create a triable issue of fact to survive summary judgment, *see Causey*, 162 F.3d at 802; *Evans*, 80 F.3d at 960; *Cook*, 988 F.2d at 513. Accordingly, because Plaintiff has not established his prima facie case of retaliation and has failed to demonstrate Defendant's articulated reason is a pretext for retaliation, the Court recommends summary judgment be granted on Plaintiff's Title VII retaliation claim against Defendant.

---

[14]Plaintiff argues that other similarly situated employees, specifically Dorian Lezia and Kent Humbler, were caught sleeping and were not terminated. [Docs. 6 ¶ 19; 29 at 5.] However, Plaintiff has not been able to show that these employees are similarly situated to him. Plaintiff testified that Lezia was under a different supervisor. [Doc. 29-1 at 21.] With respect to Humbler, Plaintiff testified that he did not work in the same department as Plaintiff or have the same supervisors. [*Id.* at 23.] Further, Plaintiff is not able to prove that these employees, or any other employees, were caught sleeping at work and then reported to Human Resources. [Docs. 28-2 ¶ 8; 28-7 ¶ 4; 29-5 at 6.] Accordingly, Plaintiff cannot prove that the reason for his termination was a pretext because he has not shown that other similarly situated employees were treated differently. *See Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (holding that a plaintiff "must establish that other employees were similarly situated in all relevant respects; that they dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it" (alterations in original) (internal citations and quotation marks omitted)).

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

January 26, 2015
Greenville, South Carolina