IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Scotty G. Terry, | ) | Civil Action No.: 6:13-2824-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | |
| Drive Automotive Industries of | ) | |
| America, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

On October 16, 2013, the plaintiff Scotty G. Terry ("the plaintiff") filed this action against Drive Automotive Industries of America, Inc. ("the defendant"), alleging claims against his former employer for retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended,  42 U.S.C. §§ 2000e *et seq* ("Title VII").

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., this employment discrimination matter was referred to United States Magistrate Judge Jacquelyn D. Austin for consideration of pretrial matters.  The magistrate judge prepared a thorough Report and Recommendation which recommends that the defendant's motion for summary judgment be granted.  (ECF No. 38.) The plaintiff filed timely objections to the Report and Recommendation (ECF No. 39), and the defendant filed a reply (ECF No. 42). For the reasons set forth herein, this Court cannot adopt the Report and Recommendation.

## BACKGROUND AND PROCEDURAL HISTORY

The Report and Recommendation sets forth in detail the relevant facts and standards of law on this matter, and the Court incorporates them and summarizes below in relevant part.  The plaintiff filed this matter on October 16, 2013, alleging retaliation

claims related to his employment with the defendant. (ECF No. 1.)   On August 15, 2014, the defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 28.)  After consideration of the response filed in opposition to the motion for summary judgment (ECF No. 29) and the defendant's reply (ECF No. 31), the magistrate judge issued a Report and Recommendation recommending that the defendant's motion for summary judgment be granted. (ECF No. 38.)

## STANDARD OF REVIEW

The magistrate judge makes only a recommendation to this Court.   The recommendation has no presumptive weight.   The responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976).  The Court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made.  The Court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or may recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

## DISCUSSION

The plaintiff has objected to the magistrate judge's recommendation (1) that he cannot establish the causation element of his *prima facie* case and (2) that he has not created issues of fact concerning whether or not the defendant's legitimate non-discriminatory reason for termination was pretextual. (ECF No. 39.) The Court says only what is necessary to address such objections against the already meaningful backdrop of a thorough Report of the magistrate judge, incorporated entirely by specific reference, herein, to the degree not inconsistent.  Exhaustive recitation of law and fact exists there.

The magistrate judge made a typically supportable recommendation but the undersigned would be slightly more cautious in her view of the evidence.

The Court has some sympathy for the plaintiff's theory of the case. And, the plaintiff has made progress, in the undersigned's view, concerning whether issues of fact exist as to the knowledge the defendant had concerning him having called the hotline. He has put forward evidence that Gervaise Minne and the managers over him knew about the "hotline" complaint at the time of his termination. (Pl. Dep. at 23-26; see generally Pl. Decl.) This is material in two respects. First, the plaintiff's deposition testimony and declaration create issues of fact as to whether the defendant actually knew. Admittedly, much of it is his own testimony but the Court would accept it; a jury can discern his credibility. But, secondarily and most critically, it meets the response of the defendant, and the primary conclusion of the magistrate judge, that regardless of the defendant's knowledge, there is no evidence of when the defendant might have acquired such information and, therefore, the temporal proximity between the hotline call and the plaintiff's discharge is simply too remote, legally, to establish the causation element of his claim. The Court would depart from this view, ever so reluctantly.

First, the plaintiff has testified that Scott Claus said directly to him, "They're basically wanting to terminate everybody who was involved in that situation [hotline call]." (Pl. Dep. at 22.) This statement, which apparently has not been contested as hearsay or as otherwise inadmissible, is additional proof of causation, which of its own force eliminates the need to rely on temporal proximity alone. It is some evidence that the decisionmakers were expressly motivated to terminate the plaintiff for the hotline call.

Second, the Court disagrees that there is not some evidence of when the defendant

might have known, such that the claim should narrowly survive.  In the plaintiff's declaration

dated September 2, 2014, the plaintiff avers that in "May or June 2013 Scott Clans [sic] .

. . told [Plaintiff] that 'they' who I understood to be [Cox, Anderson, and Minne], knew

exactly who had made the hotline complaint." (Pl. Decl. ¶ 4.)  The plaintiff additionally

swears, "A few weeks after Claus told me that they knew who made the complaint, I was

discharged and I again filed a complaint with the hot line."  *Id*. ¶ 5.  These two events, the

conversation with Claus and the termination "a few weeks after," create some issue of fact

as to whether the defendant's knowledge, if any at all, arose at some point more proximate

to the termination than the hotline call, five months prior.  Although not a calendar date, it

is evidence of temporal proximity, less legally problematic than the nearly five month

window argued by the defendant and accepted by the magistrate judge.  *See Kennedy v.*

*South Carolina Dept. of Labor Licensing and Regulation*, 2014 WL 3799505, *8 (D.S.C.

August 1, 2014) (finding three month temporal proximity insufficient, even when

decisionmakers had knowledge of the plaintiff's protected activity.); *Pascual v. Lowe's*

*Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (finding three to four months

between protected activity and termination found too long to establish causal connection

by temporal proximity).

As to the permissibility of the plaintiff's declaration, the magistrate judge rightly

noted that May or June 2013 (the date identified in the declaration for the Claus

conversation)  is almost one year after the plaintiff's employment was terminated and,

therefore, makes the conversation dubiously late proof incapable to establish when or even

that Cox, Anderson, or Minne were aware the plaintiff had phoned the hotline before he

was terminated.  But, even assuming a scrivener's error, the magistrate judge found that the declaration would conflict with the plaintiff's deposition taken June 5, 2014. (Pl. Dep. at 3–5 (stating that "one or two days after" Plaintiff was terminated, Scott Claus told him that Cox knew who had called the hotline.)  Relying on *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990) (holding that if an affidavit conflicts with earlier sworn testimony, it must "be disregarded as a sham issue of fact"), the magistrate judge disregarded it.

But, the Court thinks the result too harsh.  The plaintiff has not altered the substance of his testimony – that he was told by Scott Claus that decisionmakers knew of the hotline call prior to his termination.  In both deposition and declaration, he has testified as much. (Compare Pl. Dep. at 21-22 with Pl. Decl. ¶¶ 4-5.)  That there is some inconsistency as to *when* he was exactly told this information, while certainly relevant to the reliability of his recall, does not constitute a kind of changed position, on the merits, from which a jury should be insulated.  The defendants may impeach him for it.  But, the Court is uncomfortable clipping his case for the variance.

Having saved the declaration, the Court would conservatively conclude that there is now evidence creating an issue of fact as to when the defendant knew of the hotline call, if at all, such that the temporal proximity need not be measured so strictly from the date of the hotline call to discharge.  And, as discussed, the alleged remarks of Claus reduce the need for exclusive reliance on the timeline of events.

The Court also is comfortable that evidence of pretext exists.  It is unequivocally true that the defendant does not have to be *correct* about the legitimate non-discriminatory for termination but only that it must believe such reason. *See Hawkins v. PepsiCo, Inc.*, 203

F.3d 274, 279 (4th Cir. 2000) ("[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."); *DeJarnetta v. Corning, Inc*., 133 F.3d 293, 299 (4th Cir. 1998) (explaining that the court's role is not to reweigh or evaluate the correctness or fairness of personnel decisions).  So, the plaintiff does not escape summary judgment simply by disagreeing, in testimony, that he was asleep.  But, the plaintiff has done more.  He has submitted evidence that creates issues of fact as to whether the defendant really believed the plaintiff was asleep.  First, he has submitted a copy of an email from Jeff Capps, the only employee present during the time he was allegedly asleep, informing Harold Lewis, Assembly Maintenance Supervisor, that he had not seen anyone sleeping on Monday, July 16, 2012. (ECF No. 29-4 at 6.)  Second, he proffers the testimony of David Haase, a former employee of Defendant, who averred that he had seen Minne behave threateningly towards Capps and that Capps had told him that Minne was looking for back-up that the plaintiff had been sleeping.  (Doc. 29-5 at 22–23, 27.)  Respectfully, the undersigned simply disagrees with the magistrate judge's rationale for disregarding this evidence as either admissible or probative.  Taken together, a reasonable jury might infer that the defendant was attempting to manufacture evidence of sleeping against the plaintiff, which is some indication that the defendant did not believe its own rationale.

The Court would also emphasize again the statement of Claus that decisionmakers were attempting to discharge employees connected with the hotline call.  Altogether, there is an evidentiary basis from which a jury could reasonably find that the defendant's preferred explanation is not worthy of credence and that retaliation was the real motivation.

**CONCLUSION**

The Court has carefully reviewed the objections made by the plaintiff and has conducted the required *de novo* review.  After considering the motion, the record, the Report and Recommendation of the magistrate judge and the objections, the Court declines to adopt the Report and Recommendation but incorporates relevant facts and law herein by reference.

It is, therefore, ORDERED that the defendant's motion for summary judgment (ECF No. 28) is DENIED.

IT IS SO ORDERED.

<u>s/Bruce Howe Hendricks</u>
United States District Judge

Greenville, South Carolina
March 17, 2015